**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ronald SMITH, Jr., Defendant–Appellant.**

**Ronald SMITH, Jr., Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 19536, 20628.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 14, 1996.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for respondent.

PARRISH, Judge.

Ronald Smith, Jr., (defendant) was convicted after a jury trial of murder in the first degree for killing Mary D. Sadler. § 565.020.1.[1] He was charged and convicted as a persistent offender. § 558.016.3. Following conviction and delivery to the department of corrections, defendant filed a Rule 29.15 motion that was denied after an evidentiary hearing.

Defendant appeals the judgment of conviction in his criminal case (No. 19536) and the order denying his Rule 29.15 motion (No. 20628). The appeals were consolidated in

accordance with Rule 29.15(*l*) as it existed on the date movant's Rule 29.15 motion was filed. *See* Rule 29.15(m).

The evidence is considered in the light most favorable to the verdict. *State v. Richardson,* 923 S.W.2d 301, 307 (Mo. banc 1996). On Saturday, November 9, 1991, defendant, John Smith, Donald Henson and Donald's son, Terry Henson, went from Arnold, Missouri, to the Lake Wappappello area in southeastern Missouri.[2] According to John, the purpose of the trip was to locate Donald's daughter and retrieve the car she was driving. The car belonged to Donald.

The group was traveling in defendant's car. They stopped at the home of Linda Henson, Donald's sister. Donald went into his sister's house and returned carrying a .44 caliber rifle. Donald took the rifle from his sister's house without her permission or knowledge.

Defendant drove from Donald's sister's house to Puxico, then to Poplar Bluff. They looked for Donald's daughter at several taverns. They stopped at the last tavern about 10:30 or 11:00 p.m. While at the tavern, defendant and Donald had an argument. Terry heard defendant say, "[W]ell, let's just kick in the door and shoot the place up." Defendant had what appeared to be a .38 caliber pistol.

The group left the tavern at closing time and headed toward Wappappello Lake. Donald gave defendant directions. They turned onto a gravel road and stopped. Donald and defendant got out of the car and walked along the gravel road. Donald told Terry to stay in the car. Terry told John that Donald and defendant were going to the Sadler residence.

The Sadler residence was the home of Mary and Bill Sadler. Mary and Bill Sadler were the mother and step-father of Rodney Norman. Norman had testified against Donald in a murder trial in which Donald had been acquitted. Norman was to be a witness against Donald in another criminal case in

---

1. References to statutes are to RSMo Supp.1991.

2. John Smith is defendant's uncle. Donald Henson is John Smith's brother-in-law. Donald,

John and Terry will be referred to by first names to avoid confusion.

Wayne County, Missouri, in which Donald was charged with assault.

John got out of the car and followed Donald and defendant. When John saw the Sadler house, Donald was trying to kick in the front door. He saw defendant come around the house and kick the door open. Donald and defendant went inside the house. Several shots were fired.

Terry got out of the car and rushed to the house. He went inside and saw Donald fall. He testified that defendant walked over to Donald and shot him. Terry screamed that his dad was dead. John heard several more gunshots then ran into the house. He saw Terry holding Donald in his arms. Defendant was standing over them with a gun.

Defendant, Terry and John left the house carrying Donald's body. They put Donald, the .44 caliber rifle and the .38 caliber pistol in the trunk of the car and headed toward St. Louis. They stopped the car at a river a short distance from the Sadler house. Defendant threw the guns into the river. After they threw away the guns, they discussed what to do with Donald's body. They stopped at a bridge over a creek and threw the body into the creek.

Defendant, Terry and John went to John's sister's house in Arnold, Missouri. They told her Donald went to the Sadler house; that Rodney Norman was there; that Rodney killed Donald and killed everyone else in the house.

The shooting at the Sadler residence was reported to the Wayne County Sheriff's department. Sheriff Henry Snider and Deputy Sheriff Dean Finch went to the Sadler residence. When Deputy Finch arrived at approximately 3:00 a.m., an ambulance was in the driveway. Mr. Sadler was in the ambulance. He had a gunshot wound to his lower abdomen. Mrs. Sadler was on the floor in the north bedroom of the residence. She had three gunshot wounds in her upper right chest. Mrs. Sadler was dead. The cause of her death was determined to have been bleeding as a result of a single gunshot wound to the right chest.

On Monday morning, November 11, 1991, defendant, John and Terry turned themselves in. They initially told a lawyer they contacted, Mr. Walsh, and law enforcement officers that John and defendant stayed in the car while Terry and Donald ran into the house and "shot these people up." John told the sheriff that Terry shot Donald inside the house. He later recanted the statement.

John entered into a negotiated plea agreement that included his agreement to testify at defendant's trial. He testified:

Q. ... Why did you tell Mr. Walsh that if it wasn't true?

A. Well, because we decided, me and [defendant] decided to stick together on our stories.

Q. Okay, and, but you knew that you were throwing Terry to the wolves, is that right?

A. Right.

. . .

Q. Okay. You decided you would stick together?

A. Stick together, yeah, because me and Ronnie was both on parole.

Defendant does not challenge the sufficiency of the evidence presented at his trial. His allegations of trial court error are directed to the trial court's verdict-directing instruction, the jury's use of trial exhibits, and an allegation of juror misconduct. He also presents two allegations of error directed to the determination of his Rule 29.15 motion, both alleging ineffective assistance of trial counsel.

Point I asserts the trial court erred in giving Instruction No. 5. Defendant contends the instruction was erroneous because it did not require the jury to find he deliberated on his actions before Mrs. Sadler was killed.

Section 565.020.1 states:

A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter.

"Deliberation is distinctive to murder in the first degree. Accordingly, a verdict director for first degree murder must require a finding of deliberation." *State v. Isa*, 850 S.W.2d 876, 899 (Mo. banc 1993).

The trial court's verdict-directing instruction, Instruction No. 5, states:

A person is responsible for his own conduct and he is also responsible for the conduct of another person or other persons in committing an offense if he acts with them with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person or persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on November 10, 1991, in the County of Wayne, State of Missouri, the defendant caused the death of Mary D. Sadler, by shooting her, and

Second, the defendant knew or was aware that his conduct was practically certain to cause the death of Mary D. Sadler, and

Third, that with the purpose of promoting or furthering the death of Mary D. Sadler, the defendant aided or encouraged James Don Henson in causing the death of Mary D. Sadler and reflected upon this matter cooly [sic] and fully,

then you will find the defendant guilty of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the first degree.

If you do find the defendant guilty of murder in the first degree, you will return a verdict finding him guilty of murder in the first degree.

Defendant argues that the instruction is defective in that its paragraph Third does not require a finding that defendant reflected upon the matter coolly and fully before committing the act charged.

The state's response to defendant's claim is that the instruction "complied with MAI–CR3d 313.02 as modified by MAI–CR3d 304.04 (effective 1–1–87), which was in effect at the time of [defendant's] trial."[3] Instruc-

tion No. 5 was patterned after MAI–CR3d 313.02 and 304.04.

The state's response is based on language in paragraph 8 of Notes on Use to MAI–CR3d 304.04. Paragraph 8 explains:

A special problem can arise when using MAI–CR 3d 304.04 [the pattern instruction used to instruct juries on a defendant's responsibility for conduct of another person] to submit murder in the first degree. In order to be guilty of an offense based upon the conduct of another, the accessory must have both the purpose to aid the commission of an offense and whatever culpable mental state is required for the offense. Except in certain situations involving murder in the first degree, when a defendant has the purpose to aid the commission of a particular offense, he will also have the mental state needed for that offense. For example, murder usually requires an intent to kill. One cannot have the purpose to promote murder by aiding another person unless one knows the other person intends to kill and thus the accessory will have the intent to kill. Murder in the first degree requires "deliberation"—a mental state not found in any other crime. It is possible for the accessory to have the purpose to promote a murder by aiding another person without necessarily having "deliberated." To make it clear that to be guilty of murder in the first degree the defendant must have deliberated, the verdict director must require a finding of that element.

The ordinary verdict director for murder in the first degree (MAI–CR 3d 313.02) provides for this in the third paragraph which states

Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

If in using MAI–CR 3d 304.04 this element is ascribed to the defendant alone or to the defendant *and* the other person or persons, the requirement of finding that the defendant "deliberated" is satisfied.

---

3. Defendant's trial was held in February 1994. MAI–CR3d 304.04 changed effective 10–1–94.

References to Notes on Use are to those applicable to the 1–1–87 version of MAI–CR3d 304.04.

If, however, this element is not ascribed to the defendant but is ascribed solely to another person (as would be the case where the defendant did not perform any other conduct which caused the death and the defendant's liability is based solely on his aiding the person who caused the death), then it is suggested that the ascription of that mental state to the defendant should be accomplished by modifying the paragraph following "then you are instructed that the offense of [*name of offense*] has occurred ..." to read as follows:

> (Second) (Third) ( [*next numbered paragraph*] ), that with the purpose of promoting or furthering the death of [*name of victim*], the defendant aided or encouraged [*name(s) of other person(s) involved or, if unknown, a general identification of the other(s) involved, such as "another person," "other person(s)," etc.*] in causing the death of [*name of victim*] and reflected upon this matter cooly [sic] and fully,

. . . .

The state points out that paragraph Third of Instruction No. 5 contains the language suggested for using MAI–CR3d 304.04 in a murder in the first degree charge involving an accessory. The state contends, therefore, no error was committed.

The state, in making its argument, fails to recognize that an instruction must be read in its entirety. *State v. Day*, 515 S.W.2d 584, 585 (Mo.App.1974). The instruction's meaning is determined by considering it in that manner. *Dorrin v. Union Electric Co.*, 581 S.W.2d 852, 860 (Mo.App.1979). The meaning cannot be ascertained from a reading of isolated paragraphs or phrases. *Id. See also, Wiedower v. ACF Industries, Inc.*, 715 S.W.2d 303, 305 (Mo.App.1986).

Paragraph 8's direction to use the language that appears as paragraph Third in Instruction No. 5 presupposes that the verdict-directing instruction requires the finding, in another paragraph, that the act of killing the victim occurred "after deliberation" by another person who a defendant is accused of having aided or encouraged. *See, e.g.,* paragraphs Third and Fifth in the verdict director in *State v. Isa, supra,* at 897–98. Instruction No. 5 does not require that finding. It is, therefore, erroneous.[4] The jury, having not been instructed on an element required for commission of the offense of murder in the first degree, could not have found defendant guilty of that offense. Point I is granted. The case must be reversed and remanded for new trial.

Because Point I disposes of the appeal in No. 19536, it is not necessary to address Points II and III. Likewise, because the judgment of conviction must be reversed, defendant's appeal from the order denying his Rule 29.15 motion in No. 20628 is rendered moot.

The judgment of conviction in No. 19536 is reversed and the case remanded for new trial. The appeal in No. 20628 is dismissed.

MONTGOMERY, C.J., and CROW, P.J., concur.

---

4. The only issue this opinion addresses with respect to Instruction No. 5 is the one raised in Point I. The parties should not conclude that Instruction No. 5 is otherwise sound. It is not. The allegations in paragraphs First, Second and Third hypothesize conduct of defendant rather than conduct of another who defendant is accused of having aided or encouraged. On retrial, care should be taken to draft the verdict-directing instruction in accordance with MAI–CR3d 313.02 and MAI–CR3d 304.04 to assure the question of accomplice liability that is presented to the jury is consistent with the evidence adduced. *See State v. Isa,* 850 S.W.2d at 897–98.