

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99033 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Hon. Lucy D. Rauch |
| PAUL CURTIS WHITE, | ) | |
| | ) | Filed: |
| Appellant. | ) | February 25, 2014 |

Robert Eidman was robbed and then shot and killed while sitting at his desk one morning inside his insurance office in St. Charles. Paul White and Cleo Hines were charged for the robbery and murder. White was convicted of murder in the first degree and robbery in the first degree after a jury trial. He appeals, claiming error relating to the first degree murder instruction and error in the admission of Hines's out-of-court statement. We affirm.

The sufficiency of the evidence is not at issue in this appeal. Viewed favorably to the verdict, the evidence established that Eidman was shot and killed at around 11 am on June 8, 2007. Eidman's wallet was missing from his back pocket, and he had 3 gunshot wounds: a graze wound to the chin; a neck wound caused by a shot fired less than two feet away, which could have been fatal; and a fatal gunshot wound to the head that went through his eye and out the back of his skull. The shot through Eidman's eye occurred when the victim was on his back with the shooter standing over him and firing at close

range.  There was no evidence of any other injuries or signs of struggle.  All three shots had been fired from the same gun.  There were two more unfired bullets on the floor, possibly resulting from the gun having jammed.  The wallet and gun were never found.

Surveillance video from a neighboring business showed that a Ford Focus with two people inside had driven past the insurance office twice at 10:50 and 10:54 am on the day of the murder.  Several months after the crime, White and Hines were pulled over in a Ford Focus that belonged to Hines.  In March of 2010, investigators matched White's DNA to a swab from inside the victim's back pocket.  The DNA match and the traffic stop led detectives to begin investigating White and Hines for this murder.

White was brought in for questioning multiple times between September of 2010 and June of 2012, and portions of those recorded interviews were played at trial.  During the first two interviews, White denied all involvement in the crime and refused to believe the detective when he told White that they had found his DNA on the victim's clothes.  About two weeks later, White was interviewed again.  Initially, he again denied any involvement, but ultimately—after discussing the hypothetical possibility that he might be guilty of something less than murder—he admitted that he and Hines committed the robbery together.  He explained that he had not wanted to admit to this, but when he heard what Hines and the media had been saying about what happened, he decided to confess.

White told the following story with varying degrees of consistency.  White had lost money at the casino early on the morning of the crime.  He and Hines, his roommate, needed money and decided to rob people who were cashing checks at Walmart.  In one version, White said they abandoned that plan because there were too many cameras at

2

Walmart. Later, he said he saw a man cash a check and sent Hines to get the gun from their house, but by the time he returned, the man had already left. In any case, after aborting the Walmart plan, White suggested they rob his insurance agent instead. He knew there would be cash in Eidman's office because White and his wife had gone there and made a cash payment to him a little over two months before. White told Hines that Eidman would recognize him. During the first interview, White claimed that he and Hines wore ski masks they had stolen from Walmart. Later, he said they bought bandanas at Walmart and wore those over their faces. There was evidence at trial that Walmart does not stock ski masks in June, but does carry bandanas all year. White tried to explain that by "ski mask" he was only referring generally to having their faces covered. The State argued that the story about masks was a ruse to convince the jury that they only intended to rob Eidman and, therefore, needed to protect their identities.

White said that after leaving Walmart, he and Hines drove to Eidman's office, drove around the building once, and then entered the office. White saw Eidman sitting at his desk, and they demanded money. In one version, White said Eidman tried to open the drawer where he kept the cash, and then White took the victim's wallet out of his back pocket. Later, White said that first Eidman claimed there was no money, then White took his wallet and then at some point later White tried opening the desk drawer. White claimed that he started to leave the office after taking his wallet. At some point, Hines fired a shot that gave Eidman a bloody lip. When Eidman denied having any more money, Hines shot him again and he fell to the floor. White asked Hines if he was dead, and Hines shot Eidman again. White admitted that the gun was his and said that he and

Hines split the $300 they got from Eidman's wallet. He said different things at different times about how they discarded the evidence.

White testified that the plan had been for Hines to hold the gun and White to grab the cash out of the desk drawer. Although White knew the gun they had with them was loaded, he denied having discussed shooting or killing the victim either before going into the office or once they were inside. White admitted numerous prior felony convictions for stealing and forgery offenses. White admitted that during the first robbery he committed years before, he had used an unloaded gun and did not wear a mask. The woman he had robbed later identified him, and he was convicted.

The jury was instructed on first degree murder and, alternatively, if they found White not guilty of first degree murder, they were to consider murder in the second degree. White's theory was that this was a robbery gone wrong and that he was only guilty of the lesser charge. The State argued that this was not a robbery gone wrong, but instead a plan, hatched by an expert liar, to rob Eidman and, this time, leave no witnesses. The State pointed out that there was plenty of time for White to deliberate on this killing either while driving around the office making sure Eidman was alone or during the course of events inside the office.

The jury found White guilty of murder in the first degree and robbery in the first degree. The court sentenced White to life without parole and a consecutive life sentence. This appeal follows.

In Point I, White argues that the trial court plainly erred in giving Instruction 7, the verdict director for first degree murder. Because counsel did not object at trial or include this instructional error in his motion for new trial as required by Rule 28.03, the

error was not preserved. White seeks plan error review under Rule 30.20. The State argues that because White has actually waived his right to appeal this issue, this Court can decline to review for plain error. As the Supreme Court has held, this argument "misconstrues the extent of the waiver." State v. Wurtzberger, 40 S.W.3d 893, 898 (Mo. banc 2001). Despite failing to raise the error as required by Rule 28.03, we have the discretion to review unpreserved claims of instructional error under Rule 30.20 if manifest injustice would otherwise occur. Id.; see also State v. Mangum, 390 S.W.3d 853, 860-61 (Mo. App. E.D. 2013).

"In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." State v. Doolittle, 896 S.W.2d 27, 29 (Mo. banc 1995). We are more inclined to reverse in cases where the erroneous instruction did not merely include a wrong word or some other ambiguity, but excused the State from its burden of proof on a contested element of the crime. Magnum, 390 S.W.3d at 861. "A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of the offense charged. Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed." State v. Stover, 388 S.W.3d 138, 153-54 (Mo. banc 2012) (internal citations and quotation marks omitted).

White argues for reversal here because the jury was not properly instructed on the element of deliberation required for first degree murder. He claims that the instruction contained no requirement for the jury to find that Hines deliberated on the killing of the victim and White cannot be convicted of first degree murder based on aiding Hines

5

unless Hines is also guilty of first degree murder. We agree, as does the State, that the verdict director for first degree murder was erroneously worded. But the error did not relieve the State of its burden or otherwise so misdirect the jury or affect its verdict.

Instruction 7 stated:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 8, 2007, in the County of St. Charles, State of Missouri, the defendant or Cleo Hines caused the death of Robert Eidman by shooting him, and

Second, that defendant or Cleo Hines knew that his conduct was practically certain to cause the death of Robert Eidman,

then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the death of Robert Eidman, the defendant acted alone, acted together with or aided Cleo Hines in causing the death of Robert Eidman and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you will find the defendant guilty under Count 1 of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of the propositions, you must find the defendant not guilty of that offense.

There is no question that a finding of deliberation is required to convict a person of first degree murder. Section 565.020.1. This instruction does not include the element of deliberation in the first two paragraphs. Therefore, it was incorrect to instruct the jury

6

in the sentence immediately following those paragraphs that "the offense of murder in the first degree has occurred." But that error is not problematic as to White's guilt for first degree murder. In murder cases where the defendant acted with or aided another person, it is possible that the "two murderous actors may have differing mental states, although they act together." State v. Ervin, 835 S.W.2d 905, 923 (Mo. banc 1992). Therefore, the State is "not required to prove that a defendant's accomplice committed murder in the first degree in order to convict the defendant of murder in the first degree for his or her acts in aiding the commission of murder." Id.

In Ervin, the jury was instructed that if they found the accomplice caused the death of the victim and did so with the purpose of causing death and the defendant did so after deliberation, then the crime of first degree murder occurred and if they further found the defendant after deliberation aided or encouraged the accomplice in causing death, then the defendant was guilty of first degree murder. Id. at 922. This instruction was patterned on Missouri Approved Instruction-CR3d 304.04 (1987). Id. at 923. On appeal, the Court noted first that applicable MAIs and Notes on Use are to be given to the exclusion of other instructions; the failure to do so constitutes error, the prejudicial effect of which is to be judicially determined. Id. (citing Rule 28.02). The instruction as given clearly deviated from MAI 304.04 and accompanying Note on Use 7(a),[1] which stated that when the sole basis for a defendant's liability is his aiding another person, all the elements of the offense must be ascribed to that other person. Id. The Court concluded that despite failing to ascribe deliberation to the accomplice, there was no prejudicial effect because there is no requirement in the law that the State must first prove that the accomplice committed first degree murder before convicting the defendant of first degree

[1] Note on Use 7(a) (1987) is now 5(a) (2003). It is not specific to homicide offenses.

7

murder.  Id.  There is no such requirement because each person is guilty of the degree of the crime that is compatible with his own culpable mental state.  Id.  "A defendant, in a state of cool blood, may promote a murder by aiding a person who kills in the heat of passion.  Such a defendant would be guilty of murder in the first degree though the other person is guilty of a lesser offense."  Id.  The Court in Ervin pointed out that the existing Note on Use for describing a defendant's deliberation when liability is based solely on his aiding another person "erroneously suggests" that the element must also be ascribed to that other person.  Id. (citing Note on Use 8(b) (1987), now 7(b) (2003)).

The 1987 version of the MAIs applicable in Ervin did not address situations where the crime is divided into degrees.  In 1994, MAI 304.04 was amended to add Notes on Use 6 and 7(c), which reflect how to handle these situations under the law as stated in Ervin:

### 6.  Conviction of a higher degree.

In most instances where the defendant's criminal liability is based solely on the conduct of another person, the defendant will be charged with the same degree of the offense as the other person and MAI-CR 3d 304.04 will require a finding that the other person has committed all the elements of that degree of the offense, including the required culpable mental state.  However, when an offense is divided into degrees, it is possible for the defendant accessory to be guilty of a higher degree than the other person.  See Section 562.051, RSMo 2000, and State v. Ervin, 835 S.W.2d 905, 923 (Mo. banc 1992).  In such a case, the paragraphs alleging the commission of the offense by the other person need include (in addition to the conduct elements) only the culpable mental state needed for a conviction of the lowest degree of the offense.  However, the culpable mental state needed to aggravate the offense to a higher degree for the defendant then must be attributed to the defendant in the paragraphs following "then you are instructed that the offense of [*name of offense*] has occurred..."  This type of situation will arise most often with regard to the homicide offenses.  See Notes on Use 7(c).

### 7.  Special problems with homicide offenses.

\*\*\*

**(c) Liability for a higher degree of criminal homicide than the other person.**

In homicide cases, it is possible for the accessory to be guilty of a higher degree than the other person.  See Section 562.051, RSMo 2000; State v. Ervin, 835 S.W.2d 905, 923 (Mo. banc 1992).  An accessory could be guilty of murder in the first degree even though the person who did the act of killing is only guilty of murder in the second degree or manslaughter.  This could occur if the other person acted on the spur of the moment under the influence of sudden passion, while the defendant who provided the aid or encouragement acted after deliberation.  In cases where the evidence is such that the jury could find that the defendant is guilty of a higher degree, the initial paragraphs of the verdict directing instruction attributing the commission of the offense to the other person will require a finding of the culpable mental state for the appropriate lower degree of the offense.  The phrase beginning "then you are instructed" should be modified to name the offense without reference to degree, such as "criminal homicide."  The next paragraph should be modified to require a finding that the defendant had the necessary culpable mental state for the higher degree.

For example, in a prosecution where the evidence is such that the jury could find that the person who did the act of killing is guilty only of murder in the second degree but could also find that the defendant accessory acted with deliberation, the jury would be instructed to find that the other person caused the death and did so "knowingly."  The instruction would continue:

> then you are instructed that a (murder) (criminal homicide) has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
> (Second) (Third) ([*next numbered paragraph*]), that with the purpose of promoting or furthering the death of [*name of victim*], the defendant aided or encouraged [*name(s) of other person(s) involved, or if unknown, a general identification of the other(s) involved, such as "another person," "other person(s)," etc.*] in causing the death of [*name of victim*] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,
> then you will find the defendant guilty (under Count____) of murder in the first degree.

MAI 304.04 (2003).

9

Although these Notes on Use were not the stated basis[2] at trial for Instruction 7, the instruction does track the language of 7(c), except for the mistaken reference to the criminal homicide as "first degree murder" after the first two paragraphs. Because Instruction 7 read as a whole makes clear that to find White guilty of murder in the first degree he must have deliberated, it accurately reflects the law. That is, as written, the first two paragraphs actually describe a lesser degree of murder attributable to Hines, and then the deliberation needed for first degree murder is ascribed to White in the third paragraph. This is permissible under Ervin. The key to holding White responsible for first degree murder is that *White* deliberated. Thus, the error in describing Hines's culpability was not prejudicial to White. See Ervin, 835 S.W.2d at 923-24; see also State v. Richardson, 923 S.W.2d 301 (Mo. banc 1996).[3]

White relies on State v. Smith, in which an instruction similar to Instruction 7 was given. 934 S.W.2d 324 (Mo. App. S.D. 1996). That case is not applicable here because it was decided under the 1987 version of MAI 304.04 and does not follow Ervin. Rather, in Smith, the court found that the instruction erroneously failed to ascribe deliberation to

---

[2] It is unclear from the record of the jury instruction conference which particular Notes on Use this instruction was patterned on. At one point, the State indicated that Instruction 7 was based on the language described in the Notes on Use for scenarios where it is not clear who committed the criminal act, which may be Note on Use 5(c). But there was much discussion, some off the record. Ultimately, the court noted that Instruction 7 was based on MAI 314.02 (for first degree murder), as modified by MAI 304.04, without more specific reference.

[3] In Richardson, also decided under the 1987 version of MAI 304.04 but with the benefit of the Ervin opinion, there was conflicting evidence about whether the defendant and just one accomplice were present at the crime scene or whether another accomplice was there as well. 923 S.W.2d at 319. The jury was instructed that if the defendant or the first accomplice caused the victim's death and did so knowingly and after deliberation, then first degree murder occurred. Id. at 315-16. The instruction went on to say that if the jury also found that the defendant aided the first accomplice *or the second accomplice* after deliberation, they must find the defendant guilty of first degree murder. Id. at 319. The Court said that the reference to the second accomplice—who had not been mentioned in the initial three paragraphs laying out the elements of the crime—was not a correct usage of MAI 304.04, but it was not prejudicial because the State is not required to prove that the defendant's accomplice committed murder in the first degree in order to convict the defendant thereof. Id.

10

the accomplice, which it concluded was required under MAI 304.04, Note on Use 8. Id. at 328. The court decided that the aid or encourage paragraph described in Note on Use 8 "presupposes that the verdict-directing instruction requires the finding, in another paragraph, that the act of killing the victim occurred 'after deliberation' by another person who a defendant is accused of having aided or encourage." 934 S.W.2d at 328. It is clear since Ervin and the resulting changes to the MAI that such a presupposition was wrong.

The court in Smith cited State v. Isa in support of that conclusion, a case White also relies on in his brief. 850 S.W.2d 876 (Mo. banc 1993). We disagree that Isa supports Smith's conclusion about the requisite mental state of an accomplice. Isa—also decided under the 1987 MAIs—does not hold that the defendant's accomplice must first be found to have committed murder before concluding that the defendant has done so. Rather, the issue in Isa was whether stating the deliberation element in the disjunctive as to the defendant or her accomplice adequately stated that element. Id. at 899. The Court concluded that it did and also found that the "aid and encourage" paragraph gave "additional assurance" that the jury must find that the defendant herself had the specific mental state of deliberation required for a first degree murder accomplice. Id. at 899. Isa simply does not address the accomplice's deliberation and is, therefore, not on point.

Similarly, we find nothing applicable to this case in State v. Bell, also cited by White. 854 S.W.2d 612 (Mo. App. E.D. 1993). The issue in Bell was the erroneous use of disjunctives, which allowed for the possibility that the jury could find no deliberation on the part of the defendant, either on the theory that he was the shooter or merely aided

11

the shooter. Id. at 614. That is not the issue White raises in this appeal, and Bell says nothing about the co-defendant's deliberation.

Finally, White's argument that Instruction 7 confused the jury and allowed for the possibility of finding that White deliberated only on the robbery and not on Eidman's death is without merit. The phrasing of the deliberation element in the third paragraph—"with the purpose of promoting or furthering the death of Robert Eidman, the defendant acted alone, acted together with or aided Cleo Hines in causing the death of Robert Eidman and did so after deliberation"—tracks in pertinent part the MAI phrasing for this type of aid or encourage paragraph. See MAI-CR3d 304.04 (2003), Notes on Use 7(b) and 7(c) (using the following language: with the purpose of promoting or furthering the death of ____, the defendant aided or encouraged _____ in causing the death of _____ and did so after deliberation).[4] Because it conforms to the applicable Notes on Use, there was no error in the third paragraph and, therefore, no need to consider the jury's alleged confusion about it.[5] See State v. Davis, 963 S.W.2d 317, 323-24 (Mo. App. W.D. 1997) (similar paragraph conformed to applicable notes on use and therefore no error and no need to address alleged prejudicial effect).

In sum, read as a whole, Instruction 7 contained all the required elements to find White guilty of first degree murder, and any errors therein did not so misdirect the jury or affect the verdict that we can say a manifest injustice has occurred.

Point I is denied.

---

[4] The fact that Instruction 7 includes language not in the MAI to account for the possibility that White "acted alone" is not challenged on appeal.

[5] White points to the jury's note asking "Can the phrase 'conduct practically certain to cause the death of [victim]' refer to the entire robbery, the murder, or both?" The jury was told to refer back to the evidence as they remembered it and the instructions of the court. To conclude that this question evidences a belief by the jury that White could be convicted of first degree murder for deliberating only on the robbery is pure speculation.

12

In his second point on appeal, White argues that the trial court erred in admitting into evidence Hines's statement to police that White had hidden the gun behind a water heater in their home. This statement was repeated to White during an interview with police in October 2010, portions of which were played for the jury at trial (including a clip containing Hines's statement). White again seeks plain error review because there was no objection to the admission of this statement at trial and the error was not raised in the motion for new trial. The State contends that appellate review, including for plain error, has been waived. We agree with the State.

Before trial, the court granted White's motion in limine to preclude admission of Hines's statements generally. This does not, of course, "automatically result in a permanent exclusion" of that evidence. State v. Evans, 639 S.W.2d 820, 822 (Mo. banc 1982). Rather, that pre-trial ruling is interlocutory, and objection at trial is required to preserve the issue for appeal. Id. But when the October interview was offered for admission at trial, counsel stated affirmatively that she had no objection to its admission. When the clip containing Hines's statement about where White had hidden the gun was played, counsel did not object. When the CD compiling all the clips played from this interview was offered for admission, counsel again affirmatively stated that she had no objection. Moreover, this alleged error was not included in the motion for new trial.

Having stated affirmatively at trial that there was no objection to the admission of this evidence, appellate review of its admission is waived, including plain error review under Rule 30.20. See State v. Williams, 411 S.W.3d 275, 277 (Mo. App. S.D. 2013); State v. Johnson, 284 S.W.3d 561, 582 (Mo. banc 2009); State v. Thompson, 401 S.W.3d 581, 586 (Mo. App. E.D. 2013). The narrow exception to this general rule—involving

mutual understanding among the parties and the court that the statement of "no objection" did not repudiate a prior objection—does not apply here. The only objection that could possibly refer to this particular statement by Hines was in the pre-trial motion in limine. The "continuing objection" White cites in his brief related to an entirely different interview. "The mere filing of a pretrial motion or motions raising an objection to evidence is not sufficient to invoke the exception." <u>Williams</u>, 411 S.W.3d at 278-79 (cataloging the few instances where courts have found a "mutual understanding" exception, all based on conduct at trial).

Point II is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Lawrence E. Mooney, P.J. and
Sherri B. Sullivan, J., concur.

14