

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                )
                                  )
       Respondent,           )
                                  )
  vs.                           )    No. SD32900
                                  )
HEATHER DAWN BENNETT,             )    FILED: February 9, 2015
                                  )
       Appellant.            )

### APPEAL FROM THE CIRCUIT COURT OF DOUGLAS COUNTY

#### Honorable R. Craig Carter, Judge

### **AFFIRMED**

Heather Bennett ("Defendant") appeals convictions for robbery and second-degree (felony) murder of Jackie "Allen" Yarber. She claims insufficient evidence supports her murder conviction and charges trial court error in admitting into evidence preliminary hearing testimony and her statement to police. We affirm.

## Background

We summarize facts in accordance with our standard of review, crediting only evidence and reasonable inferences supporting the verdict and disregarding all others. ***State v. Stallman***, 289 S.W.3d 776, 778 (Mo.App. 2009).

Yarber, who had known Defendant just a few days, showered her with attention, gifts, and cash in hopes of dating her. The day of the killing, Defendant was preparing for her child's birthday party, but had no car. Yarber drove Defendant around; spent $150 of his money on decorations, gifts, and pizza; and let Defendant drive his truck to pick up party guests. After the party that night, Yarber and others went to Defendant's home.

Defendant went to a back room with Brad Jenkins and Daniel Baird to smoke methamphetamine. She claimed Yarber carried $400; they could get him "out back and beat him up and take it." Jenkins felt it was too close to the house. Defendant then said they could "take him out in the woods and kill him." After she offered more encouragement, it was agreed to kill Yarber, split the stolen cash three ways, and take his truck (Defendant wanted the stereo and wheels).

Yarber was persuaded to leave with Baird and Jenkins in his truck under pretense of going "dirt-roading" (drinking on dirt roads). Defendant rode with her friend Michael Hand and told him the plan as he drove. Out in the country, the trucks parted ways. Jenkins and Baird robbed Yarber and slayed him in grisly fashion, then called Defendant to report it was "done" and eventually returned to her home.

Police investigation led to arrests and charges. Jenkins and Baird each pleaded guilty to robbery, murder, and armed criminal action. A jury convicted Defendant of robbery and murder, resulting in this appeal.

### Point I – Sufficiency of Felony Murder Evidence

Second-degree murder occurs if a person commits any felony and "another

2

person is killed as a result of the perpetration of that felony." ***Stallman***, 289 S.W.3d at 779. Under Missouri's foreseeability-proximate cause theory of felony murder, the actual killer's identity "is irrelevant and a defendant may be considered responsible for any deaths that are the natural and proximate result of the commission of a felony." ***Id***.[1] Defendant does not challenge the sufficiency of proof for her robbery conviction; the issue is whether Yarber died as a reasonably foreseeable consequence of the robbery. ***State v. Cole***, 384 S.W.3d 318, 328 (Mo.App. 2012).

Defendant urges "no" – that no evidence indicated she knew about, planned, or encouraged the killing, and "[a]t most, she knew about or encouraged a robbery." She portrays Baird and Jenkins as subsequently deciding to kill Yarber, an independent, intervening cause allegedly relieving her from criminal responsibility for the death.

This argument ignores our standard of review, ***Stallman***, 289 S.W.3d at 778, and above-summarized testimony indicating Defendant foresaw and even promoted the killing of Yarber.[2] Point I fails.

---

[1] We decline Defendant's invitation to reinterpret Missouri's felony-murder statute in light of ***Burrage v. U.S.***, 134 S. Ct. 881 (2014). ***Burrage*** addressed sentencing provisions of the federal Controlled Substances Act, did not declare constitutional law, was not a felony murder case *per se*, and compels no particular result here.

[2] To quote fully some of this testimony:

Q When [Defendant] told you could take [Victim] out back and [rob him] what, if anything, did you do?

A I said no.

Q Why?

A Because it was too close to the house.

Q What were you concerned about?

A Getting snitched out or told on.

## Point II – Alleged *Crawford* Violation

Michael Hand initially cooperated with the prosecution and testified at Defendant's preliminary hearing. But after Hand twice failed to appear for deposition, the prosecutor reported "a very good chance" he would charge Hand with crimes arising out of the robbery and murder.

After Hand refused to testify at Defendant's trial, invoking his right against self-incrimination, the prosecutor offered Hand's testimony from Defendant's

---

Q What happened at that point?

A We sat around some more, talking a little more, then we talked about killing Allen Yarber.

Q Who brought that up?

A Heather did.

Q What did she say?

A She said instead of taking him out we can take him out in the woods and kill him.

\* \* \*

Q What did you do at that point?

A At that point we talked little more, she told me Jackie was a child molester.

Q How did that make you feel?

A Angry.

Q Why is that?

A Because I don't like child molesters, makes me scared for my kids.

Q When she told you that what, if anything, happened.

A After she told me that, I was on board to kill him.

\* \* \*

Q At that point you guys had decided to do what?

A Kill Allen Yarber.

Q What else?

A Take his truck, Heather wanted the stereo and wheels.

Q When did she tell you that?

A She told me right before we left the room.

Q Was there any talk about taking cash?

A Yes, sir, she said we could split it three ways.

Q $400 three ways?

A Yes, sir.

preliminary hearing. Defense counsel objected, arguing that issues had changed since the preliminary hearing and the defense had no way to cross-examine Hand further. The trial court overruled the objection and Hand's prior testimony was read to the jury.

Defendant claims this violated her constitutional right to confront witnesses against her, citing ***Crawford v. Washington***, 541 U.S. 36 (2004). We review this question of law *de novo*. ***State v. Turner***, 242 S.W.3d 770, 774 (Mo.App. 2008).

We rejected a similar complaint in ***Turner*** where, as here, the defense had availed itself of the opportunity to cross-examine the witness at preliminary hearing. Drawing on earlier cases, we concluded that admitting the prior testimony did not violate ***Crawford***. ***Id***. at 776-77 (citing primarily ***State v. Griffin***, 848 S.W.2d 464 (Mo. banc 1993), and ***State v. Aaron***, 218 S.W.3d 501 (Mo.App. 2007)).

Defendant claims cross-examination at the preliminary hearing was not adequate because Hand then was seen as a fact witness, not a potential co-defendant. Similar arguments failed in ***Griffin***, 848 S.W.2d at 470, ***Turner***, 242 S.W.3d at 776, and ***Aaron***, 218 S.W.3d at 510.

The trial court did not violate ***Crawford*** or abuse its discretion in admitting Hand's prior testimony. ***Turner***, 242 S.W.3d at 776-77. We deny Point II.

## Point III – Alleged *Siebert* Violation

This point charges error "in admitting [Defendant's] police statement into evidence at trial over objection," citing an alleged violation of ***Missouri v. Seibert***,

542 U.S. 600 (2004).[3] Yet an initial and basic flaw of this complaint is lack of timely objection.

The record on appeal includes two recorded "statements" – State's Exhibits 42 and 44. The defense said "No objection" both when Exhibit 42 was offered and before it was played for the jury. Exhibit 44 came in through a later witness; again the defense said "No objection" before it was admitted and played in part for the jury.

Later, during the fourth day of trial, defense cross-examination developed the testimony Defendant now cites in claiming a *Siebert* violation. Although Defendant later objected (unsuccessfully and somewhat unclearly) to the jury hearing any more of admitted Exhibit 44 or related testimony, she never moved to strike the admitted exhibits or sought a withdrawal instruction or any similar relief.

We need not reach strong arguments of no *Siebert* violation, or reject Defandant's claim as in *Gaw*, 285 S.W.3d at 324-25. Here, "Defendant did not simply fail to object to Exhibit [42 or 44], [s]he affirmatively stated [s]he had no objection to [either]." *State v. Langford*, No. SD32548, 2014 WL 2895869, at *4 (Mo.App. June 26, 2014).

---

[3] *Siebert* tested

> a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession .... [T]he interrogating officer follows it with *Miranda* warnings and then leads the suspect to cover the same ground a second time. The question ... is the admissibility of the repeated statement.

*Id*. at 604. As interpreted for Missouri courts, *Siebert* holds "that a confession is inadmissible despite a belated *Miranda* warning where a 'two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning.'" *State v. Gaw*, 285 S.W.3d 318, 323 (Mo. banc 2009) (quoting *Siebert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment)).

6

> "The general rule in Missouri is that a statement of 'no objection' when evidence is introduced affirmatively waives appellate review of the admission." *State v. McWhorter,* 240 S.W.3d 761, 763 (Mo.App. S.D. 2007). "Under those circumstances, even plain error review is not warranted." *State v. Goudeau,* 85 S.W.3d 126, 128–29 (Mo.App. S.D.2002) (quoting *State v. Markham,* 63 S.W.3d 701, 707-08 (Mo.App. S.D. 2002)); *see also State v. White,* 421 S.W.3d 560, 569 (Mo.App. E.D. 2014); *State v. Massa,* 410 S.W.3d 645, 656-57 (Mo.App. S.D. 2013); *State v. Johnson,* 160 S.W.3d 839, 842 (Mo.App. S.D. 2005).

*Id*. Defendant waived her Point III challenge to admission of these exhibits. *Id*.

Point denied.

## Conclusion

Finding no merit in any of Defendant's points, we affirm the judgment and convictions.


DANIEL E. SCOTT, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

WILLIAM W. FRANCIS, JR., P.J./C.J. – CONCURS