**David M. MANWARREN,**
Movant–Appellant,

v.

**STATE of Missouri, Respondent–**
Respondent.

No. 27887.

Missouri Court of Appeals,
Southern District,
Division Two.

May 24, 2007.

---

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Robert J. Bartholomew, Assistant At-torney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Following a jury trial, David M. Man-warren ("Movant") was convicted on two counts (Counts I and II) of the class D felony of endangering the welfare of a child in the first degree, pursuant to § 568.045, RSMo 2000,[1] and one count (Count III) of the class A felony of murder in the second degree, pursuant to § 565.021, RSMo 2000. Movant was sen-tenced on June 20, 2003, to two terms of five years' imprisonment [2] upon convictions under Counts I and II, and life imprison-ment under Count III. Movant's sentence for life imprisonment was ordered to run consecutive to the five-year sentence for Count I, and concurrent with the five-year sentence under Count II. This Court af-firmed the convictions and sentences on direct appeal in *State v. Manwarren,* 139 S.W.3d 267 (Mo.App.2006).

Movant timely filed a *pro se* Rule 29.15 motion for post-conviction relief. Counsel was appointed, and an amended motion was filed. An evidentiary hearing was held, after which the motion court issued its findings and conclusions denying Mov-ant's claims for relief. Movant appeals. We affirm

### 1) *Factual Background*

Count I of the Information charged en-dangering the welfare of a child in the first degree, alleging, in part, that Movant "knowingly acted in a manner that created a substantial risk to the life, body and

---

1. Section 568.045 was later amended effec-tive June 27, 2003, *see* § 568.045, RSMo Cum.Supp.2003, reclassifying the crime of en-dangering the welfare of a child in the first degree from a class D felony to a Class C felony.

2. Section 558.011.1(4), the general sentencing statute for Class D felonies, effective June 27, 2003, was "amended to set out that Class D felonies are punishable by 'a term of years not to exceed four years.' § 558.011.1(4), RSMo CumSupp.2003." *Emerick v. State,* 172 S.W.3d 867, 869–70 (Mo.App.2005).

health of [Joshua] Polson, a child less than seventeen years of age by striking him with his fists and other objects, pushing him, grabbing him, shaking him and slamming him into a ceiling[.]" Count II also charged Movant with first-degree endangering the welfare of a child and alleged that Movant "knowingly acted in a manner that created a substantial risk to the life, body and health of [Joshua] Polson, a child less than seventeen years of age by shaking him and slamming him into the floor[.]"

The charges brought against Movant related to allegations that Movant was responsible for the abuse and subsequent death of his girlfriend's son, two-year-old Joshua Polson ("Josh"), who, along with his mother, lived with Movant and with whom Movant often babysat. Movant was alone and babysitting with Josh on March 10, 2001, when Josh was taken by ambulance to Skaggs Hospital in Branson and subsequently air-lifted to a hospital in Springfield. Josh had suffered severe brain damage and was in a coma. It was determined that the extensive injuries were consistent with child abuse and "shaken-baby syndrome," not a fall from a chair or table, as Movant had claimed. Josh never recovered. He was pronounced brain dead and died March 13, 2001.

The reference in Count I to "slamming him into a ceiling" was directed to a particular incident recounted at trial, when Josh hit his head on the ceiling tile after Movant tossed him up above his head into the air. The impact of Josh's head hitting the ceiling of the mobile home created a dent or hole in the ceiling tile, which was evidenced by a photograph admitted at trial. Movant testified that he did not intend to hurt Josh, that they were playing, and he threw the child higher than he had intended. Josh did not cry or appear injured.

Josh's mother testified that when she saw Movant tossing her son above his head and told him to stop because he could hurt the child, Appellant told her he had done it before and the child had not been hurt.

At Movant's trial, there was further testimony that Movant picked on Josh, pushing him down and tripping him on several occasions, and in one instance, Movant head-butted Josh while both were wrestling and playing on the floor, causing a knot on his forehead and dark circles under Josh's eyes. Josh's mother had to tell Movant that he needed to stop. There was also testimony regarding Movant whipping Josh with a belt for not listening and causing Josh, who was unrestrained in the front seat, to tumble and hit his face on the car door when Movant was driving. Josh's mother testified that when she spoke with Movant about the manner in which he treated Josh, Movant told her he needed help to stop being mean to Josh.

Two instructions submitted first-degree endangering the welfare of a child. Instruction No. 6 read, in part:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that . . . the defendant slammed Joshua W. Polson's head into a ceiling, and

Second, that in so doing, the defendant created a substantial risk to the life or body or health of Joshua W. Polson, and

Third, that Joshua W. Polson was then less than seventeen years old, and

Fourth, that the defendant acted knowingly with respect to the facts and circumstances submitted in this instruction,

then you will find the defendant guilty under Count I of endangering the welfare of a child in the first degree.

Instruction No. 9 read, in part:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that ... the defendant shook and slammed Joshua W. Polson onto the floor, and

Second, that in so doing, the defendant created a substantial risk to the life or body or health of Joshua W. Polson, and

Third, that Joshua W. Polson was then less than seventeen years old, and

Fourth, that the defendant acted knowingly with respect to the facts and circumstances submitted in this instruction,

then you will find the defendant guilty under Count II of endangering the welfare of a child in the first degree.

■ In his sole point relied on, Movant claims that the motion court's denial of post-conviction relief was error, in that trial counsel failed to render effective assistance when she did not request the inclusion of the definition of "knowingly," pursuant to § 562.016.3, in instructions submitted on the counts of endangering the welfare of a child in the first degree.[3] Counsel requested definitions for "acted with criminal negligence" and "recklessly" in instructions related to endangering in the second degree, but chose not to request that the jury be instructed on the legal definition of "knowingly," as provided under MAI–CR3d 333.00. Movant contends that because his mental state was the central issue in his defense, "the jury

was left with a more general layman's understanding of 'knowingly,'" which served to deprive jurors of "an adequate basis upon which to distinguish [Movant's] mental state and the other culpable mental states from the legal requirements of 'knowingly[.]'" Had such definition been submitted, Movant asserts, "the jury would have concluded that the state's evidence and [Movant's] actions did not sufficiently establish the 'knowingly' mental state beyond a reasonable doubt, and consequently, the verdicts in all three counts would have been different."

Related to Movant's claim here, the motion court found that Counsel's decision to provide the jury with definitions for "reckless" and "criminal negligence," while not defining "knowingly," "was appropriate trial strategy to focus the jury on a basis to distinguish a 'knowing' from a 'criminally negligent' or 'reckless' act, to put the State to a higher burden of proving a commonplace understanding of the term 'knowingly' and attempt to receive a lesser conviction than the crimes as charged."

### 2) *Standard of Review*

■ Our review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous only if, after a review of the entire record, this Court has a definite and firm belief that a mistake has been made. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). To obtain relief, Movant must overcome the presumption that the challenged action was trial strategy. *Walker v. State*, 34 S.W.3d 297, 300 (Mo.App.2000). "[F]or trial strategy to be the basis for denying

---

**3.** The offense of endangering the welfare of a child in the first degree is found at § 568.045, RSMo 2000, which states, in part: "A person commits the crime of endangering the welfare

of a child in the first degree if: (1) The person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old."

postconviction relief[,] the strategy must be reasonable." *State v. Hamilton,* 871 S.W.2d 31, 34 (Mo.App.1993).

### 3) *Discussion*

Both instructions required a finding that Movant acted knowingly. Notes on Use 5(d) of MAI–CR3d 322.10 provides that the term "knowingly" "may be defined by the Court on its own motion and must be defined upon written request in proper form by the state or by the defendant[.]" Thus, a definition of "knowingly" was not mandated in Movant's case, in that neither party requested submission of the definition.

■ The burden is upon Movant to prove grounds for relief by a preponderance of the evidence. Rule 29.15(i). Generally, instructional errors are not cognizable in a proceeding for post-conviction relief unless such errors rise to the level of a constitutional error substantially depriving a defendant of the right to a fair trial. *Tilley v. State,* 202 S.W.3d 726, 732 (Mo.App.2006). There exists a strong presumption that counsel rendered "adequate assistance and made significant decisions in the exercise of reasonable professional judgment." *Walker,* 34 S.W.3d at 300. To succeed upon a claim of ineffective assistance of counsel, Movant must prove that counsel's performance "fell below an objective standard of reasonableness." *Id.* Movant must also prove that counsel's error prejudiced him and must demonstrate that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* In the context of Movant's claim here, " 'prejudice' is the potential for confusing or misleading the jury." *Tilley,* 202 S.W.3d at 732 (quoting *State v. Dismang,* 151 S.W.3d 155, 164 (Mo.App.2004)).

The theory of Movant's defense was to argue for a lesser-included offense, such as manslaughter, "as opposed to murder," and second-degree, as opposed to first-degree child endangerment. Trial counsel argued that Movant's actions were reckless, rather than knowing or intentional, and she attempted to portray Movant, who was twenty years old at the time, as a young, inexperienced parent "with a child he was unable to deal with." For example, she made the argument to the jury that the incident referred to in Count I was not an intentional attempt by Movant to inflict injury; that it was accidental and "not knowing." Trial counsel expressed her opinion that she did not believe Movant intended any injury when he played with Josh in that manner.

Trial counsel testified at the motion hearing that it was her strategy not to request that the jury be instructed with the MAI definition of "knowingly." She stated: "I thought that the definition [of "knowingly"] was kind of convoluted. I thought the word 'knowingly' puts an impression in—in a person's mind that is stronger than—than what the definition could have been interpreted as." She believed that the MAI definition was confusing, with which the motion court agreed, and effectively "watered down" the State's burden of proof.

MAI–CR3d 333.00 provides the definition for the terms "knowingly, knowing, knowledge, or knew":

A person knew, or acts knowingly, or with knowledge,

(a) with respect to his or her conduct or to attendant circumstances when the person (is)(was) aware of the nature of his or her conduct or that those circumstances (exist) (existed), or

(b) with respect to a result of a person's conduct when he or she (is)(was) aware

that his or her conduct (is)(was) practically certain to cause that result.

■ "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." *Young v. State,* 761 S.W.2d 725, 727 (Mo.App.1988). Notes on Use 5(d) of MAI–CR3d 333.10 does not require that "knowingly" be defined in this case. Trial counsel made a reasoned, conscious decision not to request a definitional instruction for the term "knowingly," based upon the exercise of her professional judgment in the presentation of Movant's defense and in an effort to focus that defense on the explicit definitions of lesser mental states. In her professional judgment, trial counsel concluded that the jurors' common and ordinary understanding of the term "knowingly" would make a determination that Movant acted knowingly more difficult, and therefore less likely to be found by the jury, than the use of the definition of that term under MAI–CR3d 333.10. Movant offered no evidence at the motion hearing that this trial strategy fell below an objective standard of reasonableness. He only argues that, in hindsight, because the option of giving the instruction was available it was unreasonable for trial counsel not to exercise that option. Such hindsight is not sufficient to carry Movant's burden of proving ineffectiveness of his trial counsel.

Even where it has been determined that failure to define a specific type of intent or mental state was erroneous, the error was found not to be reversible when the term was used in its ordinary and commonly understood meaning and did not confuse or mislead the jury. *See State v. Bozarth,* 51 S.W.3d 179, 182 (Mo.App.2001); *State v. Matheson,* 919 S.W.2d 553, 558–59 (Mo. App.1996) ("where an instruction uses a word in its ordinary, common-sense meaning, then no confusion occurs simply be-

cause the word is not defined"). Trial counsel's strategy was premised upon the belief that the ordinary and common understanding of "knowingly" is somewhat stricter than the legal definition as stated by MAI–CR3d 333.10, and Movant now argues it is less strict. However, "[t]he common definition of 'knowingly' is 'in a knowing manner ... with awareness, deliberateness, or intention'" and "is consistent with the definition set forth in MAI–CR3d 333.00." *Bozarth,* 51 S.W.3d at 182 (quoting Webster's Third New International Dictionary Unabridged 1252 (1971)). Given this consistency, we cannot say that trial counsel's strategy was unreasonable.

The motion court concluded that trial counsel's strategy of intentionally not requesting this definitional instruction was reasonable. Having reviewed and considered the entire record, we have not come to a definite and firm belief that a mistake has been made and, therefore, we find the motion court's conclusion is not clearly erroneous. Point denied.

### 4) *Decision*

The motion court's denial of post-conviction relief is affirmed.

GARRISON, J., and BARNEY, J., concur.