

# Missouri Court of Appeals
## Southern District

### In Division

BRANDY B. SHADDOX,      )
      )
    Movant-Appellant,    )
      )
    v.      )    No. SD38318
      )
STATE OF MISSOURI,      )    **Filed:  April 28, 2025**
      )
    Respondent-Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

The Honorable David A. Cole, Judge

### <u>AFFIRMED</u>

Brandy B. Shaddox ("Shaddox") appeals the Circuit Court of Lawrence County, Missouri's ("motion court's") denial of her amended Rule 29.15[1] motion for post-conviction relief following an evidentiary hearing.  In four points relied on, Shaddox claims she was denied effective assistance of counsel at trial because counsel (1) failed to investigate and present evidence from a qualified psychiatrist during the guilt phase of her trial to support a diminished capacity defense (Point I); (2) failed to timely object to the first version of the verdict director for murder in the first degree on the basis it did not require a finding of deliberation (Point II); (3) failed to request a mistrial when the

---

[1] Unless otherwise indicated, all rule references are to Missouri Court Rules (2025).

defense alerted the trial court to an error in the first version of the verdict director for murder in the first degree after it was given to the jury (Point III); and (4) failed to object to the final revised verdict director for murder in the first degree on the basis it did not adequately require a finding of individual deliberation (Point IV). Finding no merit in any of Shaddox's points, we affirm the motion court's denial of post-conviction relief.

## Factual Background and Procedural History

### Underlying Criminal Proceedings

Shaddox was charged and convicted following a jury trial of murder in the first degree (Count I), assault in the first degree (Count II), armed criminal action (Count III), kidnapping (Count IV), and forgery (Count VI).[2] *See **State v. Shaddox***, 598 S.W.3d 691, 693 (Mo. App. S.D. 2020); *see also* sections 565.020, 565.050, 571.015, 565.110, RSMo Cum.Supp. 2004, and 570.090, RSMo Cum.Supp. 2002.[3] The facts giving rise to her convictions were set forth by this Court in Shaddox's direct appeal of the judgment of convictions and sentences, ***id.*** at 693-94, as follows without further attribution:

Victim was 72 years old at the time of his death. He spent about the last 15 of those years living in a trailer in Hollister. Shaddox (who was 38 years old at the time of trial) met Victim when she walked into his trailer park after having car trouble. One week later, Shaddox moved in with Victim, and they began having "a sexual[-]nature friendship."

---

[2] The State dismissed Count V, a charge for felonious restraint, during the trial. *See **Shaddox***, 598 S.W.3d at 693.

[3] Unless otherwise indicated, all statutory references are to RSMo 2000.

Shaddox testified that she had been living with Victim for about a month when she noticed "things [in Victim's trailer] that were in another house that [she] had lived in." Victim denied that the items belonged to Shaddox. Shaddox nonetheless testified that she felt afraid. When she told several people, including Mark Bailey ("Co-Defendant"), about her concerns, they agreed to help Shaddox move out.

Just prior to Victim's death, Shaddox put a large blue tarp in her car and went with Co-Defendant to purchase a Taser and some zip-ties. On November 7, 2015, Shaddox called both Co-Defendant and Victim and asked them to pick her up at A-1 Storage, claiming that her car had run out of gas. Victim arrived in his truck with a can of gasoline and some cigarettes for Shaddox. Shaddox then "[t]ased [Victim] so he wouldn't try and block [her] from moving out." When the Taser did not disable Victim, Shaddox tased him again, and they wrestled for possession of the Taser. Shaddox got a flashlight from Victim's truck and hit him in the head with it several times.

Shaddox, with or without the assistance of Co-Defendant, zip-tied Victim's wrists and ankles. Shaddox then drove Victim's truck to her car, which she had parked in a church parking lot, and she transferred Victim into the back of her car. With Co-Defendant following in his vehicle, she then drove to an abandoned house in a remote location. Shaddox left Victim in the back of her car – still bound with zip-ties and without access to food or water – and she and Co-Defendant drove away in his car. The following day, Shaddox went back to check on Victim. Victim, still bound, was alive, and he asked Shaddox what she was going to do. Shaddox said that she was "going to go get help."

Shaddox did not get help, and Victim's dead body was found seven days later, on November 14, 2015, still bound hand-and-foot in the back of Shaddox's car. The mechanism of Victim's[4] death was hypothermia that resulted from his exposure to the cold.

The jury found Shaddox guilty on all counts, and the trial court sentenced her to serve consecutive terms of life imprisonment without the possibility of parole on Count I, life imprisonment on Count II, 20 years' imprisonment on Count III, 15 years' imprisonment on Count IV, and four years' imprisonment on Count VI.

Post-Conviction Relief Proceedings

On July 17, 2020, Shaddox filed her *pro se* Rule 29.15 motion for post-conviction relief. Post-conviction counsel filed an amended Rule 29.15 motion on November 19, 2020, asserting six claims of ineffective assistance of trial counsel and two claims of due process violations.[5] Pertinent to this appeal, Shaddox claimed she received ineffective assistance of counsel in that trial counsel failed to investigate and present evidence from a qualified psychiatrist during the guilt phase of her trial to support a diminished capacity defense; failed to timely object to the first version of Instruction No. 6, the verdict director for murder in the first degree, on the basis that it did not require the jury to find deliberation; failed to request a mistrial when the defense alerted the trial court to an error in the first version of Instruction No. 6 after it was given to the jury; and failed to object

---

[4] The opinion on direct appeal reads, "The mechanism of Defendant's death was hypothermia . . . ." *Id.* at 694. This is obviously a typographical error; Shaddox, the defendant, did not die, but Victim died and his mechanism of death was hypothermia.

[5] We have independently verified the timeliness of Shaddox's *pro se* and amended Rule 29.15 post-conviction motions. *Moore v. State*, 458 S.W.3d 822, 825-26 (Mo. banc 2015).

to the final revised version of Instruction No. 6 submitted to the jury because it did not require deliberation.

An evidentiary hearing was held on the claims asserted in Shaddox's amended Rule 29.15 motion on June 20, 2023. The motion court issued findings of fact and conclusions of law denying Shaddox's amended Rule 29.15 motion on October 10, 2023. Additional facts relevant to each point on appeal are included below.

**Standard of Review**

Appellate review of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Courtois v. State*, 693 S.W.3d 154, 161 (Mo. App. S.D. 2024). The motion court's findings and conclusions are clearly erroneous when this Court is left with the definite and firm impression that a mistake has been made after reviewing the entire record. *Flaherty v. State*, 694 S.W.3d 413, 416 (Mo. banc 2024). This review includes "*de novo* review for errors of law, rejection of factual findings for which there is no substantial evidence, and – in the rarest of cases – rejection of factual findings for which there may be substantial evidence" but the appellate court, regardless, is left with the definite and firm impression that a mistake has been made after reviewing the entire record. *Id.* at 419. The motion court's findings are presumed correct. *Id.* at 416. We defer to the motion court's superior opportunity to determine witness credibility; the motion court is free to believe all, part, or none of the evidence presented at a post-conviction hearing. *Id.* at 419.

**Analysis**

Shaddox presents four points on appeal claiming the motion court erred in denying her Rule 29.15 motion for post-conviction relief due to ineffective assistance of trial counsel.

> To obtain post-conviction relief on the basis of ineffective assistance of counsel, a movant must demonstrate by a preponderance of the evidence: (1) counsel failed to exercise the customary skill and diligence a reasonably competent attorney would perform under similar circumstances; and (2) counsel's ineffective assistance prejudiced movant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Meiners v. State*, 540 S.W.3d 832, 836 (Mo. banc 2018). Prejudice requires proof that, but for counsel's poor performance, there is a "reasonable probability" the outcome of the proceeding would have been different. *Chaney v. State*, 73 S.W.3d 843, 846 (Mo. App. S.D. 2002) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

*Courtois*, 693 S.W.3d at 161-62.

*Point I*

Shaddox argues in Point I that the motion court erred by denying her claim for post-conviction relief because trial counsel provided ineffective assistance of counsel "by failing to investigate and present evidence from a qualified psychiatrist in the guilt phase to support a diminished capacity defense." To support her claim, Shaddox called Dr. Stephen Peterson, a forensic psychiatrist, to testify at the evidentiary hearing and to opine that Shaddox did suffer diminished capacity at the time she murdered Victim.[6]

---

[6] "Diminished capacity is a special negative defense which negates the existence of a required culpable mental state." **State v. Walther**, 581 S.W.3d 702, 707 (Mo. App. E.D. 2019). "Evidence of mental disease or defect negating a culpable mental state is simply evidence that the defendant did not have the culpable mental state that is an essential element of the crime." **Id.** "Unlike a claim of not guilty by reason of mental disease or defect, the diminished capacity defense contemplates full responsibility, but only for a lesser crime." **State v. Lowe**, 318 S.W.3d 812, 819 (Mo. App. W.D. 2010). "But, the existence of a mental disease or defect will not alone suffice to

6

Dr. Peterson testified he was retained by Shaddox's post-conviction counsel to evaluate records and to interview and assess Shaddox to determine if she experienced a mental disease or defect that would have contributed "to understanding the mitigation during the sentence during her trial." The assessment included psychological testing to determine whether a diminished capacity type of defense was present. Dr. Peterson testified he also reviewed a report from Dr. Franks, a clinical and forensic psychologist hired by Shaddox's initial trial counsel ("A.D."), to evaluate Shaddox. Dr. Franks performed testing similar to Dr. Peterson's testing of Shaddox.

Dr. Peterson testified he was familiar with section 552.015(a), RSMo 2016, which states that evidence of mental disease or defect shall be admissible in a criminal proceeding to prove that the defendant did or did not have a state of mind which is an element of the offense, and opined that Shaddox suffers from a mental disease that fulfills the requirement of the statute. Dr. Peterson further opined that Shaddox's mental disease or defect was "complex post-traumatic stress disorder as a consequence of childhood sexual, physical and emotional abuse[,]" "ongoing depression[,]" and "polysubstance dependence as a consequence of the untreated [post-traumatic stress disorder ("PTSD")]." He opined that, at the time of the offenses in the underlying case, Shaddox was experiencing active mental disease that deprived her of the ability to think through her actions beforehand, and she was unable to refrain from "what she did" on the basis of her trauma history and her clouded mental state. He testified that she does not "think

_____

diminish the defendant's criminal responsibility. The jury must still determine, considering all the evidence, whether the mental disease or defect prevented the defendant from forming the requisite mental state[.]" *Id.* (quoting *Nicklasson v. State*, 105 S.W.3d 482, 484-85 (Mo. banc 2003)).

through the long-term consequences of what she is doing," but instead thinks about "how she is going to survive from minute to minute." Finally, he concluded she was unable to deliberate at the time of Victim's death.

Dr. Peterson also testified regarding Dr. Franks's report, admitted into evidence as Exhibit 15, that concluded Shaddox was competent to stand trial pursuant to section 552.020, RSMo 2016, that she did not meet the criteria for not guilty by reason of insanity under section 552.030, RSMo 2016, and that she was suffering from delusional disorder persecutory type at the time of the offenses. Dr. Franks's report did not reflect that he was asked to determine whether Shaddox was able to deliberate at the time of the offense or if she suffered from diminished capacity.

Despite Shaddox claiming trial counsel failed to investigate the possibility of a diminished-capacity defense, trial counsel testified Shaddox's mental health was "investigated substantially" before he entered her case. His testimony was substantiated at the evidentiary hearing through the testimony of A.D. A.D. testified she was concerned about Shaddox's mental state because Shaddox was "decompensating at the jail" prior to trial, so she retained Dr. Franks to evaluate Shaddox's competency and any "mitigation" of Shaddox's case. Dr. Franks concluded in his report that Shaddox suffered from a "delusional disorder persecutory type, [PTSD] and from dissociative symptoms[,] [d]epressive disorder, severe opioid disorder and a personality disorder with dependent features." Dr. Franks opined that had Shaddox "not been suffering from delusional disorder persecutory type at the time of the offense she would not have committed the offense[.]" Dr. Franks's evaluation did not include an opinion as to whether Shaddox was capable of deliberation at the time of the offense.

8

Trial counsel testified he was aware of Shaddox's history of "physical and sexual abuse" and "mental health issues," as well as Dr. Franks's report and his opinions therein. He was aware of the defense of "diminished capacity" but he made "minimal" consideration and investigation of diminished capacity because it was "inconsistent with [their] theory of the case," and would have, therefore, undermined Shaddox's defense. The defense that trial counsel strategically chose to pursue and present at trial was that Co-Defendant, not Shaddox, was the "main actor" who led "all of the activity that l[e]d to [Victim's] death" and that Shaddox neither intended nor deliberated on Victim's death. Trial counsel testified that the theory they presented at trial was the strongest theory for the defense, was the theory Shaddox wanted to pursue, and the theory that "aligned with the diverse evidence that was in the case."

The motion court found that trial counsel's failure to investigate or present evidence from a qualified psychiatrist was reasonable trial strategy. The motion court made the following findings of fact and conclusions of law regarding Shaddox's claims of ineffective assistance of counsel due to trial counsel's failure to investigate or present evidence from a qualified psychiatrist:

> [Trial counsel] testified that a diminished capacity defense was inconsistent with their theory of the case. Trial counsel made the strategic decision to present a theory of the case that did not include diminished capacity or not guilty by reason of mental disease or defect. He testified this is the theory [Shaddox]wanted to proceed with. Movant's counsel made a reasonable strategic decision not to call a psychiatrist. Trial counsel is not ineffective for choosing to pursue on[e] reasonable trial strategy to the exclusion of another. *Davis v. State*, 486 S.W.3d 898 [(Mo. banc 2016)].

We agree with the motion court. While Shaddox may have suffered diminished capacity at the time of the murder according to Dr. Peterson, Shaddox was still required to show that trial counsel was ineffective in not finding an expert to assert this opinion at

9

trial, which Shaddox failed to do in this instance given the specific circumstances of this case. Trial counsel's brief consideration of, but decision to not further investigate or pursue, a diminished-capacity defense is reasonable trial strategy when there is extensive evidence of deliberation as exists here. *Dorsey v. State*, 448 S.W.3d 276, 291-92 (Mo. banc 2014).

In *Dorsey*, similar to our facts in this case, the movant filed a post-conviction motion alleging ineffective assistance of counsel for failure to inform the movant of or to investigate a diminished capacity defense theory. *Id.* at 283, 289-92. At an evidentiary hearing, trial counsel testified that "he did not 'remember really seriously considering doing the guilt-phase diminished capacity defense[,]'" but then later testified that he did, in fact, consider the defense but "considered the evidence of guilt in this case to be overwhelming and did not view the facts to be favorable to making a diminished capacity argument." *Id.* at 290. A clinical psychologist testified on the movant's behalf that his mental state was diminished so that he was unable to deliberate prior to killing the victims. *Id.* The motion court overruled the movant's claim. *Id.* at 291. The motion court found it reasonable for trial counsel not to pursue a diminished capacity defense because such defense "had 'no real prospect of success' in light of the amount of evidence showing deliberation." *Id.* On appeal, the Court found counsel's trial strategy to not pursue or investigate a diminished capacity defense further was not unreasonable and held the motion court's conclusion was not clearly erroneous. *Id.* at 291-92; *see also Davis v. State*, 486 S.W.3d 898, 912 (Mo. banc 2016) (holding trial counsel is not ineffective for choosing to pursue one reasonable trial strategy to the exclusion of another; that the strategic decision to not present a diminished capacity defense because

10

counsel did not think the jury would believe it given the overwhelming weight of the evidence was reasonable); *Martin v. State*, 712 S.W.2d 14, 16-17 (Mo. App. E.D. 1986) (holding a reasonably competent attorney would be led to believe that evidence of premeditation and deliberation would decrease the credibility of a diminished capacity defense and, therefore, did not provide ineffective assistance in failing to raise the defense; failure to raise diminished capacity as a defense was reasonable trial strategy).

Here, like in *Dorsey*, there was overwhelming evidence presented at trial showing Shaddox deliberated. The evidence established that Shaddox had planned and prepared for the attack on Victim for days. Three days prior to the attack Shaddox placed a large blue tarp in her vehicle; the day before the attack Shaddox and Co-Defendant purchased a Taser; earlier on the day of the attack Shaddox and Co-Defendant purchased zip-ties. Shortly after purchasing the zip-ties, Shaddox called both Victim and Co-Defendant feigning an emergency, that her vehicle had run out of gas in a remote location, and asked them to assist her. The evidence showed that when Victim brought gasoline to Shaddox, Shaddox deployed the Taser in an attempt to incapacitate Victim, struggled with Victim over the Taser, found a large flashlight in Victim's truck and struck Victim in the head multiple times. Shaddox, with or without Co-Defendant's assistance, then used the zip-ties to bind Victim's hands and feet, placed Victim in his truck, and drove Victim's truck to where Shaddox's car was located. Victim was then moved to Shaddox's vehicle and Shaddox drove her car to an abandoned house in Walnut Shade. Shaddox then left her vehicle, with Victim inside, at the abandoned house and left with Co-Defendant.

Shaddox then returned to her vehicle to check on Victim the following day and found Victim still alive. Shaddox told Victim she would get him help but did not do so.

11

Shaddox returned to the location where she left her car and Victim at least two other times during the week between the assault and her arrest, but she did not help Victim or report Victim's whereabouts to the police. Shaddox told numerous false versions of where Victim was to friends, family, and law enforcement officers when they began looking for him. She tried to scrap her car and told one of her passengers that she had earned "tear drops" or "wings," which commonly refers to a tattoo signifying that the bearer has killed someone. Shaddox continued to live in Victim's trailer with Co-Defendant, used Victim's credit card, hid the Taser in Victim's trailer, and wrote a check on Victim's bank account to herself. Victim's deceased body was found in Shaddox's car at the abandoned house seven days after the initial assault.

Further, Shaddox's attempts to cover up Victim's death and hide evidence of her involvement in his murder are further evidence of deliberation. *See State v. Howery*, 427 S.W.3d 236, 246 (Mo. App. E.D. 2014) (holding "[a] defendant's conduct after the murder, as well as the disposal of evidence, can also support a finding of deliberation"). This overwhelming evidence showing Shaddox's ability to plan for, execute, and cover up the attack on Victim strongly suggests that Shaddox was capable of deliberation, meaning that she acted "deliberately, consciously, and not reflexively[,]" *Shaddox*, 598 S.W.3d at 696 (quoting *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013)), and that she knew the consequences of her actions.

Here, the motion court found trial counsel made a reasonable strategic decision to present a theory of the case that did not include diminished capacity or not guilty by reason of mental disease or defect. Because a diminished-capacity defense would have been extremely weak in light of the evidence presented at trial and the nature of this

12

crime, and was also inconsistent with the defense theory of the case, it was reasonable for trial counsel not to raise it. Reasonable choices of trial strategy "cannot serve as a basis for a claim of ineffective assistance" of counsel. **Holman v. State**, 694 S.W.3d 484, 490 (Mo. App. S.D. 2024).

> "Defense counsel has wide discretion in determining what strategy to use in defending his or her client." *Worthington v. State*, 166 S.W.3d 566, 578 (Mo. banc 2005). "Trial strategy decisions may be the basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). "Reasonable choices of trial strategy, no matter how ill[-]fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Worthington*, 166 S.W.3d at 573 (quoting *Cole v. State*, 152 S.W.3d 267, 270 (Mo. banc 2004)); *see also Francis v. State*, 183 S.W.3d 288, 301 (Mo. App. W.D. 2005) ("[A] reasonable trial strategy is not ineffective assistance, even if, in hindsight, it was not the best strategy available."). "It is also not ineffective to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." *Worthington*, 166 S.W.3d at 573.

*Id.*; s*ee also* **Ryan v. State**, 660 S.W.3d 695, 698-99 (Mo. App. S.D. 2023) (holding similar); **Moore v. State**, 431 S.W.3d 15, 20 (Mo. App. E.D. 2014) (quoting **Francis v. State**, 183 S.W.3d 288, 300 (Mo. App. W.D. 2005)) ("Provided the decision is reasonable, a deliberate and informed choice to pursue one defense over another is a matter of trial strategy that cannot form the basis of a claim of ineffective assistance of counsel."). "It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." **Ryan**, 660 S.W.3d at 698-99 (quoting **Anderson**, 196 S.W.3d at 33).

The facts of this case are akin to those presented to the Eastern District of this Court in **Stuckey v. State**, 682 S.W.3d 75 (Mo. App. E.D. 2023). The defendant in **Stuckey** appealed the denial of his Rule 29.15 post-conviction motion, claiming ineffective assistance of counsel for failure to investigate or present expert mental health

13

evidence during the penalty phase of the defendant's trial. *Id.* at 81. Trial counsel

testified that his failure to investigate or present evidence of the defendant's mental state

was a strategic choice in that he believed such evidence would have been inconsistent

with the defense theory he chose to pursue. *Id.* at 84.

> Trial Counsel testified he believed that raising the issue of juvenile brain development, or the other mental health issues he discussed at length with [defendant], would have been inconsistent with [defendant's] claim of self-defense. The fact that Trial Counsel considered and decided against presenting mental health evidence starkly distinguishes this case from *Vaca v. State*, 314 S.W.3d 331 (Mo. banc 2010), on which [defendant] relies. *Vaca* did not hold that trial counsel was ineffective merely for failing to present testimony from a mental health expert during the penalty phase, but that trial counsel performed unreasonably because he never even considered calling such a witness. [*Id.*] at 337; *see also Bozeman* [*v. State*], 653 S.W.3d [132,] 137 [(Mo. App. E.D. 2022)] (distinguishing from *Vaca* on the grounds that trial counsel clearly did ***consider*** expert testimony and chose not to present any).

*Id.*[7]

Trial counsel's decision not to investigate further and present evidence of a

diminished capacity defense was reasonable trial strategy in light of the overwhelming

---

[7] Shaddox argues that the motion court's conclusion of reasonable trial strategy is clearly erroneous based on ***Vaca v. State***, 314 S.W.3d 331 (Mo. banc 2010). The facts of ***Vaca*** are distinguishable from the facts in this case. In ***Vaca***, the Supreme Court found defense counsel's failure to admit evidence of the defendant's mental condition without any consideration or strategic reason was ineffective assistance of counsel. *Id.* at 336-37. Although Shaddox's trial counsel did initially testify that he did not have a strategic reason for failing to consult or call an expert forensic psychiatrist to testify at sentencing, he clarified, on cross-examination, that he did not pursue such a defense because it was inconsistent with his theory of the case and with the theory that Shaddox wanted to pursue. Unlike trial counsel in ***Vaca***, trial counsel did consider, however minimal, the theory of diminished capacity and chose not to investigate it further based on trial strategy.

evidence of Shaddox's deliberation before the jury and the defense's chosen theory of the case.  The motion court did not clearly err in denying Shaddox's claim.  Point I is denied.

*Points II and III*

Shaddox claims in Points II and III that the motion court erred in denying her claims of ineffective assistance of counsel in that trial counsel was ineffective for failing to timely object to the first version of Instruction No. 6 given to the jury that "did not require a finding of deliberation before first-degree murder could be found" (Point II) and for failing to request a mistrial when the defense brought the error in Instruction No. 6 to the trial court's attention (Point III).

The first Instruction No. 6 given to the jury at 12:07 p.m. read:

**INSTRUCTION NO. 6**

A person is responsible for her own conduct and she is also responsible for the conduct of another person in committing an offense if she acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, she aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between November 6, 2015 and November 14, 2015, in the County of Taney, State of Missouri, [Co-Defendant] or [Shaddox] caused the death of [Victim] by tying his hands and feet and abandoning him without adequate shelter, clothing, or medical treatment for head injuries, and

Second, that [Shaddox] knew or was aware that this conduct was practically certain to cause the death of [Victim] or that it was [Shaddox's] purpose to cause the death of [Victim], and [sic]

then you are instructed that murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the death of [Victim], [Shaddox] acted together with or aided [Co-Defendant] in causing the death of [Victim] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you will find [Shaddox] guilty under Count I of murder in the first degree.

15

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Shaddox] not guilty of that offense.

Trial counsel did not object to this version of Instruction No. 6 at trial. Both the State and the defense discussed the first version of Instruction No. 6 during closing arguments. The State and Shaddox's trial counsel compared the elements to the evidence in the case. The State argued that it was Shaddox's purpose to kill Victim, as "even a child understands the concept of starving to death, dying of thirst, freezing to death[.]" The State told the jury, "And if you find the first paragraph and the second paragraph there, then you are instructed that murder in the first degree has occurred." Immediately thereafter, the State discussed the third paragraph requiring a finding of deliberation. The State spent significant time arguing that the evidence showed Shaddox deliberated before killing Victim, concluding that "the whole week [after Shaddox left Victim bound hand and foot in her car] was one big period of deliberation when she is living in [Victim's] house and driving [Victim's] truck and spending [Victim's] money."

Trial counsel also quoted from the first version of Instruction No. 6 at the beginning of his closing argument. He argued that the State "misguided" the jury by "trying to convince" the jury that "the deliberation has to come after the acts[,]" but in reality, "deliberation comes before all of this." Trial counsel argued that the question was whether Shaddox "deliberate[d] before" everything that happened on the night of November 7. Trial counsel also told the jury that even "[b]efore we get to the element of deliberation," the jury had to find that Shaddox's "purpose in all of this running out of gas, tasing [Victim], going to get zip[-]ties[,] the purpose of all this was to cause the death of [Victim]." He referenced Shaddox's testimony that her "purpose" in doing those

16

things was just to "get her belongings and leave[,]" not to kill Victim. Trial counsel argued that Shaddox knew that she "did wrong" and that she was "responsible" for Victim's death, but that she "never intended for him to die." Trial counsel argued Shaddox was "guilty of involuntary manslaughter not murder."

Trial counsel further told the jury that "you are going to have to decide when you go to deliberate" whether Shaddox "intended to kill [Victim] and whether before that intention she deliberated about it. Before acting on that intention she thought about it and deliberated and decided I am going to do this to kill [Victim]." Trial counsel argued that Shaddox made "mistakes" in failing to get help for Victim and in failing to prevent Co-Defendant from striking Victim, but that was "different than intending for him to die," "[d]ifferent than thinking about that and then doing it." Trial counsel asked the jury to find Shaddox guilty of involuntary manslaughter.

The State argued in rebuttal that Shaddox "orchestrated" the attack on Victim and deliberated on killing him before, during, and after the attack by buying zip-ties, removing the back seat of her car and placing a large blue tarp inside, and calling Victim claiming that she ran out of gas on the road. The State argued that it took "deliberation and time" to zip-tie Victim, and noted that Shaddox was the one who struck Victim in the head with the flashlight and later drove Victim, zip-tied and bleeding, to the site where Victim was left. Then Shaddox continued to live in Victim's trailer, drive his truck, and use his credit cards. The State concluded:

> [Shaddox] is more responsible for this crime th[a]n [Co-Defendant] because she orchestrated it, she drew [Co-Defendant] in to it for his help, and then she continued with her deliberation on whether or not [Victim] would be allowed to live or allowed to die. And she chose that [Victim] die. So, there was not just deliberation after the fact[,] there was deliberation before and during.

17

Following closing arguments, the trial court excused the jury at 2:00 p.m., to retire to the jury room to begin its deliberations. Immediately thereafter, at 2:05 p.m., defense counsel informed the trial court that version one of Instruction No. 6 was not proper.

> [DEFENSE COUNSEL]: Thank you, Judge. It is 2:05 and the jury has just gotten the case. If I have made this mistake then I will take the blame, and maybe I'm the one that invited the error. In Instruction No. 6 – first of all my copy is different than the copy that the Court had and submitted to the jury. That in itself is not the worst thing. It is not necessarily a problem. I did go and I may have invited this mistake,[8] but based on what the first and second prongs say, Judge, I don't believe that it should say, "Then you are instructed that murder in the first degree has occurred." Because I don't believe that murder in the first degree can occur without an instruction of deliberation. Now, that is in the third prong.
> But based on the first and second prongs I don't see how you can say murder in the first degree has occurred. Now, if I have missed something then please tell me and we can do that.

The State then suggested that the court provide a corrected instruction to the jury, re-read the corrected instruction to the jury, and explain there was an error in the first version of Instruction No. 6. Trial co-counsel, ("E.G.") agreed to remedy the error by telling the jury to disregard the first version of Instruction No. 6 given to them, read a new version of Instruction No. 6, and tell the jury to follow the new instruction.

> BY THE COURT: The Court would have to [have] an agreement of Counsel to bring the jury back out and tell them to disregard the prior reading of Instruction [No.] 6. Take the original Instruction 6 out of their possession, read them the new one and tell them to follow the new one. Does all Counsel agree to that on record?

---

[8] The record reflects that trial counsel "specifically objected to the proposed Instruction Number 6" submitted by the State and "specifically requested" that the "in the first degree" language be added to the paragraph—the same language trial counsel later contended was erroneous.

18

The State and defense counsel agreed to the trial court's suggested procedure on the record. The jury was brought back into the courtroom at 2:13 p.m., and the trial court asked the foreperson whether the jury had begun deliberating. The foreperson stated that the jury had not. The trial court informed the jury that Instruction No. 6 needed to be replaced, removed the first version of Instruction No. 6 from the jury's instruction packet and consideration, and replaced it with the revised version of Instruction No. 6. The trial court then read the revised version of Instruction No. 6 to the jury at 2:16 p.m. The revised version of Instruction No. 6 was identical to the first version, except it omitted the phrase "in the first degree" from the sentence following "Second":

**INSTRUCTION NO. 6**

A person is responsible for her own conduct and she is also responsible for the conduct of another person in committing an offense if she acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, she aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between November 6, 2015 and November 14, 2015, in the County of Taney, State of Missouri, [Co-Defendant] or [Shaddox] caused the death of [Victim] by tying his hands and feet and abandoning him without adequate shelter, clothing, or medical treatment for head injuries, and

Second, that [Shaddox] knew or was aware that this conduct was practically certain to cause the death of [Victim] or that it was [Shaddox's] purpose to cause the death of [Victim], and

then you are instructed that murder has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the death of [Victim], [Shaddox] acted together with or aided [Co-Defendant] in causing the death of [Victim] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you will find [Shaddox] guilty under Count I of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Shaddox] not guilty of that offense.

19

If you do find [Shaddox] guilty under Count I of murder in the first degree, you are to assess and declare the punishment at imprisonment for life without eligibility for probation or parole.

The jury then retired to the jury room a second time at 2:17 p.m., to begin deliberations. The trial court did not instruct the jury to disregard the first version of Instruction No. 6 as agreed to by counsel.

Shaddox claimed in her amended Rule 29.15 motion that trial counsel provided ineffective assistance in failing to object to the original Instruction No. 6 and request a mistrial when the error was brought to the trial court's attention.

Appellate counsel ("E.F.") testified at the evidentiary hearing that the first instruction given to the jury for murder in the first degree included extra language, to find murder in the first degree occurred before the jury is asked to find deliberation by Shaddox. E.F. admitted she did not raise the trial court's handling of the alleged instructional error, that the jury was given an erroneous verdict director in the first Instruction No. 6 which instructed the jury to find that murder in the first degree had occurred prior to finding that Shaddox deliberated, that arguments were made based on this instruction, that the alleged error was raised, and that the trial court then replaced Instruction No. 6 with the revised Instruction No. 6 after the jury retired to begin deliberation. E.F. also testified that Instruction No. 6 added additional language of "acting together with or aided another person" instead of "aided or encouraged" as the Note on Use recommends. E.F. agreed Instruction No. 6 is confusing in that deliberation could be attributed to either party. E.F. stated that, had she seen instructional error, she would have raised it.

The motion court denied Shaddox's claims of ineffective assistance of counsel. In denying the claims, the motion court made the following findings of fact and conclusions of law:

> In paragraph 8(b) [Shaddox] alleges trial counsel was ineffective because trial counsel failed to object, move for a mistrial and preserve for appellate review the submission of an erroneous murder first degree verdict director. This point is without merit.
>
> On the final day of trial at 12:07 p.m., prior to closing arguments the court read to the jury the initial Instruction No. 6. Following closing arguments, the bailiffs were sworn and the jury left at 2:00 p.m. Immediately after the jury retired to begin deliberations, counsel approached the Court and indicated that Instruction No. 6 was incorrect. Following a short discussion, both the prosecution and trial counsel agreed Instruction No. 6 was in error. The bailiff was instructed by the Court to bring the jury back to the courtroom and have them bring the instructions with them. The jury returned to the courtroom at 2:13 p.m. and, informed the Court they had not begun deliberation on any specific instruction at that time. The Court informed the jury that Instruction No. 6 needed to be replaced. Instruction No. 6 was then removed from the jury instruction packet and replaced with the corrected Instruction No. 6. The Court proceeded to read the corrected instruction to the jury at 2:16 p.m. The jury was not told what was changed in the instruction and there was no further argument from the prosecution or the defense.
>
> A trial court may, and should, withdraw or correct an instruction at any time prior to the jury's deliberation. *State v. Latin*, 2023 Mo. App. Lexis 656 2023, *State v. Zinn*, 562 S.W.2d 784 (Mo. App. Spfld.D. 1978). In *Zinn*, the trial court read an incorrect instruction to the jury, realized the error, and then read a corrected instruction to the jury. Defense counsel moved for a mistrial which was denied[. *I*]*d.*at 790. The Court in this case did exactly the same thing. The jury had not begun their deliberations and the Court corrected an error in such a way to eliminate any potential confusion. The Movant has not shown she was prejudiced in any way by the Court correcting the error. Point 8(b) is denied.

We agree with the motion court's decision. First, and as the trial court did here, "[a] trial court may, and should, withdraw or correct an instruction at any time prior to the jury's deliberation." ***State v. Latin***, 675 S.W.3d 218, 222 (Mo. App. S.D. 2023). "Courts may withdraw or correct an instruction and it is the duty of the court to do so at any time during the trial, especially before the case has been submitted, if upon reflection

21

the same is considered to have been erroneously given." *Id.* (quoting *State v. Zinn*, 562 S.W.2d 784, 790 (Mo. App. Spfld.D. 1978)). Even though the trial court corrected Instruction No. 6 after the case had been submitted to the jury, it did so within a matter of minutes and it made a clear record that the jury had not begun deliberating. In order to prevail on a claim of ineffective assistance of counsel for failure to request a mistrial, a movant must show the trial court would have granted a mistrial. *Hanna v. State*, 398 S.W.3d 125, 132 (Mo. App. S.D. 2013). Shaddox failed to meet this burden here, as the trial court corrected the error before deliberation.

Further, Shaddox was not prejudiced by trial counsel's failure to object to or request a mistrial related to the first version of Instruction No. 6. Even if the first version of Instruction No. 6 had not been corrected, this Court has held that an instruction for murder in the first-degree worded the exact same way was not plain error. *State v. White*, 421 S.W.3d 560, 564-68 (Mo. App. E.D. 2014). The verdict director for murder in the first degree in *White* instructed the jury to find "that the offense of murder in the first degree has occurred" before it instructed the jury on the deliberation element. *Id.* at 564. The verdict directing instruction did not "include the element of deliberation in the first two paragraphs[,]" and thus "it was incorrect to instruct the jury in the sentence immediately following those paragraphs that 'the offense of murder in the first degree has occurred.'" *Id.* However, the court held that the error was "not problematic as to [the defendant's] guilt for first[-]degree murder" because the instruction, when "read as a whole[,]" made clear that "to find [the defendant] guilty of murder in the first degree he must have deliberated," and so the instruction "accurately reflect[ed] the law." *Id.* at 564, 567. "In the context of instructional error, plain error results when the trial court has so

22

misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *Id.* at 563-64 (quoting *State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. banc 1995)). Similarly, the prejudice required to receive post-conviction relief on the basis of ineffective assistance of counsel is a reasonable probability the outcome of the proceedings would have been different. *Courtois*, 693 S.W.3d at 162. No reasonable probability exists here that the outcome of the trial would have been different because the instruction was corrected before the jury deliberated to reach its verdict.

Moreover, the first version of Instruction No. 6 still required the jury to find that Shaddox deliberated before it could find Shaddox guilty of murder in the first degree, and "unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Shaddox] not guilty of that offense." Even with the erroneous "murder in the first degree" phrase, the jury instruction still necessitated the jury find that Shaddox deliberated before the jury could find her guilty. If, according to the reasoning in *White*, the first version of Instruction No. 6 would not have prejudiced Shaddox, certainly providing a revised version of Instruction No. 6 before the jury deliberated was not prejudicial. Moreover, the evidence that Shaddox deliberated before killing Victim was overwhelming. "If a movant's guilt is established by overwhelming evidence, *Strickland* prejudice typically cannot be established." *DeLeon v. State*, 690 S.W.3d 535, 541 (Mo. App. E.D. 2024). Points II and III are denied.

*Point IV*

Shaddox claims in Point IV that trial counsel was ineffective for failing to object to the revised version of Instruction No. 6 because "it did not adequately require a finding

23

of individual deliberation on the part of [Shaddox]." Shaddox argues that the use of the words "acting together with or aided another person" as opposed to "the defendant aided or encouraged another person" as it applied to the element of deliberation did not require individual deliberation. Shaddox asserts she was prejudiced by trial counsel's failure to object in that the issue of whether she deliberated before killing Victim was a "close question," and there was a "reasonable probability she would have been found not guilty of first-degree murder had the jury been required to find that she 'aided or encouraged' Co-Defendant instead of merely 'acted together' with him."

The motion court denied Shaddox's claim stating:

> In paragraph 8(a), Movant alleges trial counsel was ineffective because trial counsel failed to object to and preserve for appellate review the submission of the verdict director labeled as Instruction No. 6. The general rule is that instruction errors are not cognizable in a Rule 29.15 proceeding. An exception to this general rule arises only if the error reaches the level of a constitutional error, which is defined as an error "so glaring that it substantially deprives an accused of the right to a fair trial." *Hill v. State*, 532 S.W.3d 744, [750] (Mo. App. E.D. 2017). Not only is instructional error generally non-cognizable in a post-conviction proceeding, it is even less likely to be cognizable where, as in this case, the evidence supporting the Movant's [sic] was reviewed on direct appeal and be [sic] found to be sufficient to sustain the conviction. *Mangan v. State*, 665 S.W.2d [85] (Mo. App. S.D. 1984).

> . . . .

> Movant argues the verdict director does not track the language of Missouri Approved Instructions and is misleading and allowed for the jury to convict her without finding the element of deliberation. The Court disagrees and does not believe the verdict director to be misleading. Appellate counsel [E.F.], who has been doing appellate work for 34 years did not notice any error when she was reviewing, writing and arguing this case. It would be a stretch to believe that not only trial counsel but such an experienced appellate counsel would not find the verdict director misleading, but the jury somehow would. However, as in *Tilley v. State*, failure to object to an improper instruction is error and satisfies the performance prong test for ineffective assistance of counsel. 202 S.W.3d 726 (Mo. App. 2006). It does not satisfy the prejudice requirement. As in

24

*Tilley*, Movant fails to direct the Court to anything in the record that supports her claim that the outcome of the trial would have been different. Movant relies on conjuncture [sic] and speculation as her basis for asserting the outcome would have been different. Such reliance is insufficient. Point 8(a) is denied.

Again, we agree and determine the motion court's findings of fact and conclusions of law in this regard are not clearly erroneous.

"Generally, instructional errors are not cognizable in a proceeding for post-conviction relief unless such errors rise to the level of a constitutional error substantially depriving a defendant of the right to a fair trial." **Bolden v. State**, 423 S.W.3d 803, 811 (Mo. App. E.D. 2013) (quoting **Manwarren v. State**, 223 S.W.3d 899, 903 (Mo. App. S.D. 2007)). "Instructional error constitutes reversible error only when there was error in submitting the instruction and that error prejudiced the defendant." *Id.* (quoting **Tilley v. State**, 202 S.W.3d 726, 733 (Mo. App. S.D. 2006)). The prejudice required to support a claim of ineffective assistance of counsel based on instructional error is "the potential for confusing or misleading the jury." *Id.* (quoting **Manwarren**, 223 S.W.3d at 903).

The relevant portion of the corrected version of Instruction No. 6 read and submitted to the jury reads:

> Third, that with the purpose of promoting or furthering the death of [Victim], [Shaddox] acted together with or aided [Co-Defendant] in causing the death of [Victim] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, then you will find [Shaddox] guilty under Count I of murder in the first degree.

Shaddox argued that the Note on Use 7(b) for MAI-CR 404.04[9] recognized a potential problem in using the accomplice liability instruction to submit murder in the first degree and explained how to do so, and that the corrected Instruction No. 6 failed to

---

[9] MAI-CR references are to Missouri Approved Instructions – Criminal, Fourth Edition (2022).

follow this format. While we agree that the corrected version of Instruction No. 6 did not follow the suggestion of Note on Use 7(b), it required the jury to find Shaddox individually deliberated before she killed Victim.

MAI-CR 404.04 Note on Use 7(b), provides in pertinent part:

**7. Special problems with homicide offenses.**

. . . .

    **(b) Murder in the first degree.**
    A special problem can arise when using MAI-CR 4th 404.04 to submit murder in the first degree. . . . [M]urder in the first degree requires "deliberation" – a mental state not found in any other offense. It is possible for the accessory to have the purpose to promote a murder by aiding another person without necessarily having "deliberated." To make it clear that to be guilty of murder in the first degree the defendant must have deliberated, the verdict director must require a finding of that element.

    . . . .

. . . If, however, in the first listing of the elements, the element of deliberation is not so ascribed to the defendant (as would be the case where the defendant did not perform any conduct that caused the death and the defendant's liability is based solely on his aiding the person who caused the death), or if the element of deliberation is ascribed to "the defendant <u>or</u> another person," then the ascription of deliberation to the defendant should be accomplished by modifying the paragraph following "then you are instructed that the offense of [*name of offense*] has occurred . . ." to read as follows:
    (Second) (Third) ([*next numbered paragraph*]), that with the purpose of promoting or furthering the death of [*name of victim*], the defendant aided or encouraged [*name(s) of other person(s) involved or, if unknown, a general identification of the other(s) involved, such as "another person," "other person(s)," etc.*] in causing the death of [*name of victim*] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief.
Such a modification makes clear that the jury must find that the defendant did deliberate. *State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993). It also allows for a converse.

Shaddox claims Instruction No. 6 failed to conform to the approved instruction and Note on Use by including the language "acted together with or aided," instead of

26

"aided or encouraged." Note on Use 7(b) provides that when using MAI-CR 404.04 to submit murder in the first degree when a defendant did not perform any conduct that caused the death or if the element of deliberation is ascribed to "the defendant or another person," then paragraph third should read that the "defendant aided or encouraged [*name(s) of other person(s) involved or, if unknown, a general identification of the other(s) involved, such as "another person," "other person(s)," etc.*] in causing the death of [*name of victim*] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief." Note on Use 5, although it does not deal with murder in the first degree specifically, allows use of the language of "acted together with or aided" where the defendant and another were joint actors to the offense or where it is unclear whether the defendant or another person committed the conduct elements.[10]

---

[10] Arguably, MAI-CR 404.04 Note on Use 5 addresses the facts in this case and further instructs:

**5. How to modify the verdict directing instruction.**

. . . .

**(b) Where the defendant and other person(s) are joint actors in the commission of the offense.**
Where the evidence shows the defendant and another person or persons jointly committed the conduct of the offense, then,
(1) all the elements of the offense should be ascribed respectively, as supported by the evidence, to (A) the defendant, (B) the defendant <u>and</u> the other person or persons, (C) the defendant <u>or</u> the other person or persons, or (D) the other person or persons, and
(2) select one of the alternatives such as "acted together with" in the paragraph following "then you are instructed that the offense of [*name of offense*] has occurred . . . ."
In ascribing the elements of the offense to defendant and the other person or persons, be sure there is evidence supporting the particular ascriptions.
**(c) Where it is not clear whether the conduct elements were committed by the defendant or another person.**
Where the evidence is not clear or conflicts as to which person (in a group including the defendant) engaged in the conduct constituting the offense, then

27

Technically, Instruction No. 6 fails to comply with MAI-CR 314.02, 404.04, and the accompanying Note on Use 7(b). The pattern instruction hypothesized that "[Shaddox] aided or encouraged" Co-Defendant, while the revised version of Instruction No. 6 hypothesized that Shaddox "acted together with or aided" Co-Defendant, "in causing the death of [Victim] and did so after deliberation." Even though the language of the revised version of Instruction No. 6 failed to follow the Notes on Use in the approved instructions, Shaddox has failed to demonstrate prejudice. The revised version of Instruction No. 6 instructed the jurors to find that Shaddox acted together with or aided Co-Defendant in causing the death of Victim **and did so after deliberation**. This Court does not determine that the outcome of Shaddox's trial would have been different had the instruction required the jury to find Shaddox aided or encouraged Co-Defendant in causing the death of Victim and did so after deliberation. *See **State v. Young***, 369 S.W.3d 52, 53 (Mo. App. E.D. 2012) (holding that use of "acted together with or aided" rather than "aided or encouraged" not so prejudicial to deprive the defendant a fair trial as an accomplice to first-degree assault and armed criminal action).

---

(1) those conduct elements of the offense should be ascribed to the defendant <u>or</u> the other person or persons, and
(2) select one of the alternatives such as "acted together with or aided" in the paragraph following "then you are instructed that the offense of [*name of offense*] has occurred . . . ."

The evidence in this case was conflicting - Shaddox and Co-Defendant were joint actors, but it was debatable whether Shaddox or Co-Defendant bound Victim's hands and feet, one of the "conduct elements" of murder in the first degree submitted in Instruction No. 6. This is not a "case where the defendant did not perform any conduct that caused the death" or the element of deliberation is ascribed to "the defendant or another person" requiring modification as provided for in Note on Use 7(b).

28

In ***Young***, the defendant argued he was prejudiced by the verdict director's use of "acted together with or aided," instead of "aided or encouraged," another person in committing assault. ***Id.*** The court found that under the facts of that case there was "no reason to believe that the jurors drew the fine legal distinction contemplated between the undefined terms 'acted together with' and 'aided'" and the defendant was not prejudiced. ***Id.***

> While failure to follow the Notes on Use undoubtedly constitutes error, the prejudice analysis remains distinct because it depends on the facts of the case. Here, the evidence and reasonable inferences showed that the defendant targeted and approached the victim, shoved his way into the apartment, held the victim at gunpoint, signaled the other man to enter the apartment, and held the victim at gunpoint while the other man bound the victim. The defendant gagged the victim, placed a bag over the victim's head, and confirmed that the other man had indeed shot the victim after the defendant ransacked the victim's apartment.
>
> Under these circumstances, a reasonable juror applying the phrase's ordinary meaning would consider the defendant's affirmative participation with the other man in committing the crime, and would conclude that the defendant "acted together with" the other man to assault the victim. Likewise, a reasonable juror applying the word's ordinary meaning would conclude that the defendant "aided" the other man's assault on the victim. Given the facts of this case, we have no reason to believe that the jurors drew such a fine legal distinction . . . [a]nd without such a fine legal distinction, the defendant's claim of prejudice cannot be demonstrated.

***Id.*** at 58.

***Young*** confirms the use of "acted together with or aided" versus "aided and encouraged" does not affect the deliberation requirement as deliberation was not an element of assault. Instead, ***Young*** highlighted that the Notes on Use for MAI-CR 404.04 outline when each of these phrases should be used based on the evidence of the defendant's involvement in the crime. "Where the evidence shows the conduct elements of the offense were committed entirely by someone other than the defendant and the sole basis for defendant's liability is his aiding the other person," then the alternative "aided

29

or encouraged" should be used in the instruction. MAI-CR 404.04(5)(a). But where "the evidence is not clear or conflicts as to which person (in a group including the defendant) engaged in the conduct constituting the offense," then "acted together with or aided" should be used in the verdict director. MAI-CR 404.04(5)(c).

Shaddox claims *Young* is distinguishable and that the instruction was prejudicial "because the erroneous language was highlighted in closing arguments and jury selection" and "the erroneous final version of Instruction 6 was counsel's second attempt to have a valid instruction" "compounding the tendency of Instruction 6 to confuse or mislead the jury[.]" We disagree. There was overwhelming evidence of Shaddox's commission of the "conduct elements" and of deliberation in this case which showed that Shaddox prepared for and "orchestrated" the attack on Victim, personally participated in the attack, left Victim to die, and then used Victim's residence, vehicle, and credit cards as her own until she was arrested. There is no reasonable likelihood that the "acted together with" language affected the jury's verdict. Shaddox fails to carry her burden of proving she was prejudiced from trial counsel's failure to object to the corrected version of Instruction No. 6. The motion court's findings of fact and conclusion that Shaddox was not prejudiced by trial counsel's failure to object to the corrected version of Instruction No. 6 is not clearly erroneous. Point IV is denied.

## Conclusion

The motion court did not clearly err when it denied Shaddox's claims for post-conviction relief. The motion court's judgment is affirmed.

30

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J. WEST, J. – CONCURS